# In the United States Court of Federal Claims

No. 17-1763C

(Filed: October 26, 2018)

| | |
|---|---|
| ************************************* ) | |
| **THE TOLLIVER GROUP, INC.,** ) | Claim for partial reimbursement of legal |
| ) | fees incurred in successful defense of *qui* |
| **Plaintiff,** ) | *tam* suit; FAR Part 31. |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ************************************* | |

W. Brad English, Maynard, Cooper & Gale, P.C., Huntsville, Alabama, for plaintiff. With him on the briefs were J. Andrew Watson, Jon D. Levin, and Michael W. Rich, Maynard, Cooper & Gale, P.C., Huntsville, Alabama.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Maj. John E. Swords, Litigation Attorney, General Litigation Branch, United States Army Legal Services Agency, Fort Belvoir, VA.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Plaintiff, The Tolliver Group, Inc. ("Tolliver"), has brought suit seeking reimbursement of legal fees totaling $195,889.78 under a contract with the United States Army for production of a series of technical manuals. Tolliver incurred these legal fees between 2014 and 2017 in successfully defending its contract performance against a *qui tam* relator.

Following a hearing on July 9, 2018, regarding two previous motions to dismiss that the court subsequently denied, *see* Order of July 17, 2018, ECF No. 23, Tolliver filed its Second Amended and Restated Complaint ("Second Amended Complaint") on July 18, 2018, Pl.'s Second Am. & Restated Compl. ("Second Am. Compl."), ECF No. 24. The United States ("the government") has moved to dismiss Tolliver's Second Amended Complaint pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), arguing that Tolliver has failed

to state a claim upon which relief can be granted.  Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(6) ("Def.'s Mot."), ECF No. 27.  After briefing, *see* Pl.'s Resp. to Def.'s Mot. to Dismiss Under Rule 12(b)(6) ("Pl.'s Opp'n"), ECF No. 30; Def.'s Reply in Support of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 31, the motion is ready for disposition.

The court concludes that Tolliver has stated sufficient legal support and factual allegations, assumed to be true, to constitute a plausible claim for reimbursement of legal costs as allowable under Tolliver's contract with the government.  The government's motion to dismiss the complaint for failure to state a claim is therefore DENIED.

**BACKGROUND**[1]

The Army awarded Task Order 10 to DRS Technical Services, Inc. on August 6, 2011.  *See* Second Am. Compl. ¶ 6.  That fixed-price, level-of-effort contract called for development of several technical manuals for the Army's Hydrema 910 Mine Clearing Vehicle.  *See* Def.'s Mot. at 2 & App., at A002.  The contract contemplated 29,240 hours of labor divided among nine labor categories and placed a ceiling on labor costs at approximately $1.41 million.  *Id.* App., at A004.  The contractor could vary the hours expended by each labor category "only to the extent necessary to perform the required work."  *Id.* App., at A004.  The period of performance ran from August 26, 2011, through August 25, 2012, with an unfunded option for an additional 8,568 hours the following year.  *Id.* App., at A004, A006.  In support of the contract, the Army was obliged to provide a technical data package and engineering drawings.  *Id.* at 2 & App., at A012.  The Army never acquired, and thus never provided, the technical data package and engineering drawings, but nevertheless required the work to proceed.  Second Am. Compl. ¶¶ 11, 12; *see also* Def.'s Mot. at 2.

Tolliver assumed the contract through novation on September 25, 2012, Second Am. Compl. ¶ 6; Def.'s Mot. at 1-2,[2] and endeavored to perform without the technical data package or engineering drawings.  After Tolliver had worked for approximately seven months, on April 23, 2013 an amendment to the contract, Modification 8, took effect and changed the terms of performance.  *See* Def.'s Mot. at 2 & App., at A026-27.  By Modification 8, Tolliver and the Army agreed, among other things, to convert the contract into a firm-fixed-price contract for approximately $6.45 million while removing the requirement for the Army to provide the technical data package and engineering drawings.  *Id.* at 2 & App., at A027, A033, A042.[3]

---

[1]The recitations that follow do not constitute findings of fact by the court.  Instead, the recited factual elements are taken from the parties' complaint, motion, and appended exhibits, as well as judicial notice of prior relevant decisions in other courts.  No factual disputes are involved.

[2]It is not readily apparent when or how the period of initial performance shifted one year to commence in August 2012 rather than August 2011, or if Tolliver assumed the option year.

[3]Modification 8 cited the Federal Acquisition Regulations ("FAR") 48 C.F.R. § 41.103(a)(3), regarding bilateral modification as the authority for modification.  *See* Def.'s Mot. App., at A026.

Tolliver's instant complaint arises from a False Claims Act *qui tam* action filed by Robert Searle.  *See* Second Am. Compl. ¶ 14; *see also United States ex rel. Searle v. DRS Tech. Servs.*, No. 1:14-cv-00402, 2015 WL 6691973 (E.D. Va. Nov. 2, 2015), *aff'd*, 680 Fed. Appx. 163 (4th Cir. 2017).  Mr. Searle asserted that Tolliver violated the False Claims Act while performing Task Order 10 prior to the time Modification 8 became effective by certifying compliance with the technical data package despite having never received that package.  *See* Second Am. Compl. ¶ 15.  The government declined to intervene or have the case dismissed.  *See* Second Am. Compl. ¶¶ 16, 18; Def.'s Mot. at 3.  Tolliver proceeded to defend its performance, and in due course the district court dismissed the complaint, on the grounds that "[the Army] intended to provide [Tolliver] with [the technical data package] for use in developing the manuals, it did not do so, it knew that it did not do so, and still instructed [Tolliver] to proceed with performance." *Searle*, 2015 WL 6691973, at *1.  The district court's dismissal of the *qui tam* suit was affirmed on appeal by the United States Court of Appeals for the Fourth Circuit.  *Searle*, 680 Fed. Appx. 163.

Following its success in the *qui tam* suit, Tolliver submitted a claim for an equitable adjustment to the Contracting Officer on June 15, 2017, seeking reimbursement of $195,889.78 under Task Order 10 for "allowable legal fees" incurred in defending the suit.  Def.'s Mot. App., at A071; Second Am. Compl. ¶¶ 20-21.  That sum represents 80% of its attorneys' fees, the maximum allowed by the FAR for a successful defense of a False Claims Act suit.  Def.'s Mot. App., at A071-72; Second Am. Compl. ¶ 21; *see also* FAR § 31.205-47(e)(3).[4]  Tolliver's claim expressly cited FAR § 31.205-47, Def.'s Mot. App., at A071, which establishes cost principles for allowability of legal costs in commercial contracts, *see* FAR § 31.205-47.

The Contracting Officer denied the claim on September 8, 2017, ruling that Task Order 10 is a "firm fixed price order which contains no provisions [for the government to assume the risk of legal costs]." Compl. Attach. A, at 12; Second Am. Compl. ¶ 22.  The Contracting Officer also found that Tolliver's legal costs were not allowable under the cost principles of FAR Subpart 31.2, because the legal costs were neither allocable to the contract nor within the terms

---

[4]FAR § 31.205-47 is captioned "Costs related to legal and other proceedings," Subparagraph (e) of which provides in part:

> Costs incurred in connection with [successful defense of a proceeding under the False Claims Act, 31 U.S.C. § 3730] . . . may be allowable to the extent that:
>
> . . .
>
> (3) The percentage of costs allowed does not exceed the percentage determined to be appropriate considering the complexity of procurement litigation, generally accepted principles governing the award of legal fees in civil actions involving the United States as a party, and such other factors may be appropriate.  Such percentage shall not exceed 80 percent.

FAR § 31.205-47(e)(3).

of the contract. Compl. Attach. A, at 12-13; *see also* FAR § 31.201-2(a) (stating allowability criteria). Regarding allocability, the Contracting Officer found that the legal costs were neither incurred specifically for the contract nor provided the government with a benefit. Compl. Attach. A., at 12-13. Regarding the terms of the contract, the Contracting Officer found that the fixed-price nature of the contract, absent a clause providing otherwise, proscribed adjustments to Tolliver's compensation based upon its actual cost experience. Compl. Attach. A, 12-13.

Tolliver brings its claim under the Contract Disputes Act and the FAR, alleging in its Second Amended Complaint that its legal fees incurred in successfully defending the *qui tam* suit are allowable and properly recoverable under FAR § 31.205-47. Second Am. Compl. ¶¶ 25-27. Tolliver claims that its litigation costs resulted directly from performing the contract as directed by the government, *i.e.*, performing without the required technical data package, as its performance without the technical data package gave rise to the *qui tam* relator's suit. Second Am. Compl. ¶¶ 1, 21. Tolliver does not dispute the propriety of Modification 8, and the government has not disputed Tolliver's performance of the contract. The only issue in this case is whether Tolliver's legal fees are allowable under the FAR and the contract.

## STANDARDS FOR DECISION

A complaint will survive a motion to dismiss under RCFC 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (internal citation omitted).

When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986) (additional citation omitted)). Conclusory statements of law and fact, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "'[N]aked assertions[s]' devoid of 'further factual enhancement'" are insufficient to state a claim. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557); *Accord Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

## ANALYSIS

"An action brought before the Court of Federal Claims under the [Contract Disputes Act] must be based on the same claim previously presented to and denied by the contracting officer." *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). Tolliver's written claim to the Contracting Officer sought "an equitable adjustment . . . of $195,889.78 for allowable legal fees associated with [its successful defense of the *qui tam* suit]." Def.'s Mot. App., at A071

4

(Tolliver's claim to the Contracting Officer requesting reimbursement of legal costs). Tolliver asserted that its legal fees "are allowable under the contract . . . [and by] FAR [§] 31.205-47." *Id.*; *see also* Hr'g Tr. 9:14-19, 10:12 to 13:19, 21:18 to 25:22 (July 9, 2018).[5] Accordingly, when reviewing Tolliver's complaint, its claim must be confined to whether reimbursement of its legal fees are allowable under FAR Part 31 and the contract, or are required as an equitable adjustment. Because a claim for an equitable adjustment is not plausible in the circumstances at hand, the court will focus on the provisions of FAR Part 31 and the contract.[6]

FAR Subpart 31.2 covers the "allowability of costs generally, and of selected costs in particular" for a contract with commercial entities. *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1276 (Fed. Cir. 2002); *see also* FAR § 31.201-1(b) ("[T]he allowable costs to the [g]overnment are limited to those allocable costs which are allowable pursuant to Part 31 and applicable agency supplements."). The FAR allows a cost in a commercial contract "only when the cost complies with all of the following requirements: (1) Reasonableness; (2) Allocability [to the contract]; (3) [compliance with relevant accounting standards]; (4) Terms of the contract; and (5) Any limitations set forth in this subpart [31.2]." FAR § 31.201-2(a); *see also* FAR § 31.201-3

---

[5]Subsequent citations to the transcripts for the hearing held on July 9, 2018 omit the date.

[6] "An equitable adjustment makes a contractor whole after the [g]overnment modifies a contract." *E.g.*, *VHC, Inc. v. Peters*, 179 F.3d 1363, 1366 (Fed. Cir. 1999) (citing *Bruce Constr. Corp. v. United States*, 324 F.2d 516, 518 (Ct. Cl. 1963)); *see also, e.g.*, 1 West's Fed. Admin Prac. § 650 & n.3.10; Ralph C. Nash, Jr. & Steven W. Feldman, 2 *Government Contract Changes* § 16:2 (June 2018). Entitlement to an equitable adjustment requires showing liability, causation, injury in the form of actual incurred specific costs, and that the FAR allows reimbursement for those costs. *See, e.g.*, *ACE Constrs., Inc. v. United States*, 70 Fed. Cl. 253, 266-289 (2006) (ruling on four different claims for equitable adjustment), *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007); *SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 84-85 (2005) ("Once the contractor has proved the government's liability for the costs of added or changed contract work, the actual cost incurred by the contractor will provide the measure of the equitable adjustment."); (quoting *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 299, 245 (2005) (additional citation omitted)); *see also Servidone Constr. Co. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991) (referring to "liability, causation, and resultant injury").

In this case, while the government's decision not to intervene in the *qui tam* suit is the proximate cause of Tolliver's legal costs, neither Tolliver's claim to the Contracting Officer nor its Second Amended Complaint cite contract modification as the basis of its claim. The government's decision to not intervene is also not a change to the contract. The government did not issue a written change order nor did Tolliver Group notify the government at the time of the suit that it considered the government's refusal to intervene as a constructive change. Under FAR § 52.243-1, a standard contract clause regarding changes to fixed-price contracts and appearing in Task Order 10 prior to Modification 8, a contractor "must assert its right to an adjustment . . . within 30 days from the date of receipt of the written order." FAR § 52.243-1(c); *see also* Def.'s Mot. App., at A019 (Task Order 10, citing FAR § 52.243-1); Def.'s Mot. App., at A027 (Modification 8, removing a citation to FAR § 52.243-1).

5

(determining reasonableness), §§ 31.201-4-1 to 205-52 (determining allocability); § 31.205 (selected costs).

### A. *Applicability of Cost Principles*

Fixed-price contracts are not categorically immune from applicability of cost principles. FAR Part 31 applies to fixed-price contracts "whenever (a) cost analysis is performed or (b) a fixed-price contract clause requires the determination or negotiation of costs." FAR § 31.102; *see also* FAR § 31.000.[7] Tolliver's contract was a fixed-price, level-of-effort development contract within the terms of FAR § 16.207-2 (quoted *infra*, at 8-9). *See* FAR § 31.103(a) (referring to developmental contracts with commercial organizations). Specific to contracts with commercial organizations regardless of contract type, the cost principles of FAR Subpart 31.2 apply to "all contracts . . . for . . . developmental . . . work . . . negotiated . . . on the basis of cost." FAR § 31.103. That appertains "whenever cost analysis is performed as required by 15.404-1(c)."

The FAR requires a cost analysis when "certified costs or pricing data" are needed. FAR § 15.404-1(a). Certified costs or pricing data are required for contracts exceeding $750,000, *see* FAR § 15.403-4(a)(1), unless the contracting officer determines adequate price competition exists, prices are set by law or regulation, a commercial item is being procured, or when the head of the contracting activity grants a waiver, *see* FAR § 15.403-1(b).

As a preliminary matter, Tolliver's novated contract implicated the cost principles of FAR Subpart 31.2, contracts with commercial organizations. Cost principles were applied to Task Order 10, pre-Modification 8, stating its developmental nature and the initial fixed-price, level-of-effort type, and including an attendant cost analysis expressed in terms of the estimated labor hours and costs. Tolliver alleges that the operative contract is the initial fixed-price, level-of-effort contract, not the later firm-fixed-price contract.[8]

---

[7]FAR § 31.102 states that "applicable subparts of part 31" apply to fixed-price contracts, but does not specify whether or when a particular subpart applies. FAR § 31.102. FAR Part 31 divides the subparts following Subpart 31.1 ("Applicability") by the classification of the contracting organization (*e.g.*, commercial, educational, governmental, or non-profit), evidencing no intent to exclude fixed-price contracts from the cost principles of FAR Subpart 31.2 ("Contracts with Commercial Organizations"). *See generally* FAR Part 31.

[8]Task Order 10 prior to Modification 8 estimated total labor costs based on an estimate of labor required among nine different labor classifications and an estimate of cost of necessary travel. *See* Def.'s Mot. App., at A004-05.

Under the original Task Order 10, a fixed-price, level-of-effort contract, Tolliver was to provide a set number of labor hours. Task Order 10 divided the hours by labor category, estimating the required labor hours for several categories of personnel based on function and experience. Tolliver Group would receive compensation based on the quantity and type of actual labor provided, up to the price ceiling. *See* Def.'s Mot. App., at A004-05.

Nonetheless, according to the government, the fixed-price nature of the contract—devoid of a term permitting recovery of legal fees—precludes adjustments to the cost to the government, either under the original Task Order 10 or the revisions made by Modification 8. *See* Def.'s Mot. at 5-6. The government reads FAR § 31.205-47 as subject to the provisions of FAR Subpart 16.2 governing fixed-price contracts. *See* Def.'s Mot. at 6. The government contends that FAR § 31.205-47 "provides guidance on how to determine whether a legal fee is an allowable cost, but . . . parties must look to the terms of the contract to determine whether costs are allowable." *Id.*; *see also* Hr'g Tr. 10:12-23, 31:9 to 32:4. The government argues that all fixed-price contracts preclude adjustments absent a contractual clause permitting adjustments. Def.'s Mot at 5; Def.'s Reply at 3; *see also* FAR Subpart 16.2.[9] Therefore, under the government's contention, Tolliver cannot survive a motion to dismiss because in any fixed-price contract, the government could never be liable for anything other than the contract price, absent circumstances that do not exist here. *See* Def.'s Mot. at 5-6; Hr'g Tr. 29:3-22, 33:5 to 36:8.[10] If accepted, the government's argument would preclude application of the cost principles of FAR Part 31 to fixed-price contracts absent an express contractual clause adopting those provisions. *See* Hr'g Tr. 10:12-23, 31:9 to 32:4, 33:4 to 36:8; *see also* Compl. Attach. A, at 3-4 (Contracting Officer's claim denial letter).

The government contends that this prohibition is especially true for a firm-fixed-price type of contract, which the government contends is the operative contract post-Modification 8. *See, e.g.*, Def.'s Mot. at 5 ("[A] firm-fixed-price contract . . . , by definition, is not subject to any adjustment.").

Tolliver responds that the operative contract is Task Order 10 prior to Modification 8, *i.e.*, a fixed-price, level-of-effort contract, and that this type of fixed-price contract is "essentially a cost contract during the [relevant] period of performance." Pl.'s Opp'n at 5-6. They further argue that as a cost contract, the cost principles of FAR Subpart 31.2 apply and costs allowed by

---

[9]The government cites *Information Systems & Networks Corp. v. United States*, 64 Fed. Cl. 599, 605 (2005), *appeal dismissed*, 157 Fed. Appx. 264 (2005), for the proposition that "there is no such thing as 'reimbursement' of *any* costs in a fixed-price undertaking." *Id.* (emphasis in original). This is true, as that court noted, "in the *normal* course," as there is "no *general* allowance in a fixed-price contract . . . based on the actual costs of performance." *Id.* (emphasis added).

[10]The government concedes that "under certain circumstances not present here, some firm fixed price contracts are subject to equitable adjustment," *e.g.*, if the contract contains an express provision allowing for an adjustment or cost reimbursement, or in cases where the government negligently estimated its requirements. Def.'s Reply at 2. A material difference in site conditions in a construction contract or modification of the contract may also permit adjustments. *E.g.*, *Zafer Taahhut ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1361-62 (Fed. Cir. 2016) (noting that an equitable adjustment is permissible in a fixed-price contract when a change occurs, whether formal or constructive); *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 72 (1992) (noting that equitable adjustments were permitted in a fixed price contract where conditions differed materially and were reasonably unforeseeable to the contractor).

the FAR may fall within the contract, including FAR § 31.205-47 regarding legal fees. *Id.* at 6. Thus, the parties dispute the operative form of the contract relevant to Tolliver's legal costs.

The government emphasizes that Tolliver incurred its legal costs subsequent to Modification 8, during the time that the operative contract type was firm-fixed-price. *See* Def.'s Mot. at 5-6; Def.'s Reply at 3 n.1.[11] Tolliver counters that although it incurred the legal expenses after Modification 8, those expenses were attributable to work under Task Order 10 as it existed prior to the modification because the *qui tam* suit related to its performance under the contract as it existed prior to Modification 8. *See* Second Am. Compl. at ¶¶ 7, 15; Pl.'s Opp'n at 1, 4-8.

By its express terms, Modification 8 sets out no indication that it was to have retroactive effect, but rather uses forward-looking language, which generally implies that a modification lacks retroactive effect. *See, e.g.*, *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353-54 (Fed. Cir. 2006) (holding that a contract modification lacked retroactive effect when it used forward-looking terms like "continue the services" and "extend the performance period," and when the effective date did not pre-date the signing of the modification) (emphasis removed); *BioFunction, LLC v. United States*, 92 Fed. Cl. 167, 170 n.2 (2010) (finding a modification retroactive where the term of performance began nearly two years before the modification was signed). Modification 8 is a "supplemental agreement" to "convert [Task Order 10] into a [f]irm-[f]ixed [p]rice for the completion of the [t]echnical [m]anuals," and it also created and funded 13 new tasks. Def.'s Mot. App., at A027. Its effective date is April 23, 2013. *Id.* App., at A026 (block 3). Pre-existing terms and conditions of Task Order 10, "except those addressed by [Modification 8], remaining unchanged and in full force and effect." *Id.* App., at A028. Unless the negotiation for Modification 8 or operation of law extinguished Tolliver's rights that existed prior to Modification 8, Tolliver would retain its right to reimbursement of allowable costs to the extent that such a right existed.

Unlike other fixed-price contracts, "a firm-fixed-price, level-of-effort contract requires (a) the contractor to provide a specified level of effort, over a stated period of time, on work that can be stated only in general terms and (b) the [g]overnment to pay the contractor a fixed dollar amount." FAR § 16.207-1. The government pays the contractor for effort expended, akin to actual costs incurred. *See* FAR § 16.207-2 ("[P]ayment is based on the effort expended rather than on results achieved."); *see also McDonnell Douglas Corp. v. United States*, 37 Fed. Cl. 295, 299 n.5 (1997). As FAR § 16.207-2 explains,

> [a] firm-fixed-price, level-of-effort contract is suitable for investigation or study in a specific research and development area. The product of the contract is usually a report showing the results achieved through application of the required

---

[11]The government also argues that the contract type is irrelevant. Whether the operative contract is firm-fixed-price as it avers or the fixed-price, level-of-effort that Tolliver contends, the government asserts that legal fees are unallowable for any type of fixed-price contract absent a clause to the contrary. *See* Def.'s Mot. at 5-6; *see also* Hr'g Tr. 29:3-22, 33:5 to 36:8.

level of effort. However, payment is based on the effort expended rather than the results achieved.

FAR § 16.207-2. In this contract, before Modification 8, the government paid Tolliver for the value of labor it expended, at an agreed upon rate based on the type of labor, and up to a fixed cost ceiling. *See* Def.'s Mot. App., at A004.

For a development contract with a commercial organization under FAR § 31.103, the FAR specifically provides:

> (a) *The cost principles and procedures in subpart 31.2* and agency supplements *shall be used in* pricing negotiated supply service, experimental, *developmental*, and research *contracts and contract modifications with commercial organizations whenever cost analysis is performed as required by 15.404-1(c).*

FAR § 31.103(a) (emphasis added). In turn, FAR § 15.404-1 defines "[c]ost analysis," providing in pertinent part:

> (c) Cost analysis. (1) *Cost analysis is the review and evaluation of any separate cost elements* and profit or fee in an offeror's or contractor's proposal, as needed to determine a fair and reasonable price or to determine cost realism, and the application of judgment to determine how well the proposed costs represent what the cost of the contract should be, assuming reasonable economy and efficiency.
>
> (2) The [g]overnment may use various cost analysis techniques and procedures to ensure a fair and reasonable price, given the circumstances of the acquisition. Such techniques and procedures include the following:
>   (i) Verification of cost data or pricing data and evaluation of cost elements, including –
>     (A) The necessity for, and reasonableness of, proposed costs, including allowances for contingencies;
>     (B) Projection of the offeror's cost trends, on the basis or current and historical cost or pricing data;
>     (C) Reasonableness of estimates generated by appropriately calibrated and validated parametric modes or cost-estimating relations; and
>     (D) The application of audited or negotiated indirect cost rates, labor rates, and cost of money or other factors.
>
>     . . .
>
>   (iii) Comparison of costs proposed by the offeror for individual cost elements with –
>     (A) Actual costs previously incurred by the same offeror;

      (B) Previous cost estimates form the offeror or from other offerors for the same or similar items;
      (C) Other cost estimates received in response to the Government's request;
      (D) Independent [g]overnment cost estimates by technical personnel; and
      (E) Forecasts of planned expenditures.

    (iv) *Verification that the offeror's cost submissions are in accordance with the contract cost principles and procedure in part 31* and, when applicable, the requirements and procedure in 48 CFR Chapter 99 (Appendix to the FAR looseleaf edition, Cost Accounting Standards). . . .

FAR § 15.404-1(c) (emphasis added).

      Tolliver asserts that reimbursement of its legal costs is not only authorized by FAR § 31.205-47, but is allowed "under the contract." Def.'s Mot. App., at A071 (Tolliver's claim); *see also* Second Am. Compl. ¶¶ 2, 26. Although neither an express nor implied term allowing cost reimbursement appears in the contract, the cost principles of FAR Subpart 31.2 appear to apply by operation of law under the *Christian* doctrine. *E.g.*, *Bay Cty., Florida v. United States*, 112 Fed. Cl. 195, 202 (2013) (citing *G.L. Christian & Assocs. v. United States*, 312 F.2d 418, 426 (Ct. Cl. 1963)). Under this doctrine, "a mandatory contract clause that expresses a significant or deeply ingrained strand of procurement policy is considered to be included in the contract by operation of law." *Id.* at 202 (quoting *S.J. Amoroso Constr. Co. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993)). The doctrine turns on whether the contract omits a mandatory clause, not on whether the omission was intentional or inadvertent. *See id.* (quoting *S.J. Amoroso*, 12 F.3d at 1075). In this case, cost principles apply by operation of law if the contract required a cost analysis or if reimbursement of legal fees claimed by Tolliver represents a significant or deeply ingrained aspect of a fixed-price, level-of-effort development contract. *See* FAR §§ 31.102, 31.103; *Bay Cty.*, 112 Fed. Cl. at 202; *see also* FAR § 15.404-1. Because the fixed-price, level-of-effort development contract as it existed prior to Modification 8 was manifestly established on the basis of cost principles pursuant to FAR §§ 15.404-1 and 31.103, the provisions of FAR § 31.205-47 appear to apply.

B. *Reasonableness, Allocability, Compliance with Accounting Standards, and Limitations on Allowability*

      Tolliver asserts that its litigation costs were necessary and proper for its successful defense of the *qui tam* suit. Second Am. Compl. ¶¶ 1, 2, 16, 21.[12] Tolliver contends that its legal costs were "incurred specifically for the contract" and its performance of the contract per the

---

[12]Reasonableness entails a factual inquiry based upon an evaluation of a similarly-situated "prudent person in the conduct of competitive business." *See* FAR § 31.201-3.

government's direction created the issue litigated in the *qui tam* suit. Second Am. Compl. ¶¶ 11, 12, 15-17, 26; Pl.'s Opp'n at 6-7 n.3 (citing FAR § 31.201-4).[13]

FAR Subpart 31.2 limits allowable legal costs. *See* FAR § 31.205-47 ("Costs related to legal and other proceedings"). In a *qui tam* suit, legal costs "may be allowable to the extent that [the defense is successful and]: (1) The costs are reasonable . . .; (2) The costs are not otherwise recovered from [another]; and (3) The percentage of costs allowed [is appropriate and] does not exceed 80 percent." FAR 31.205-47(b), (e).

Tolliver successfully defended the *qui tam* suit brought by Mr. Searle and seeks 80% of its legal costs. Second Am. Compl. ¶¶ 17, 19, 21, 24, 25. Tolliver states that its expenses were reasonable and that it bore the costs. Second Am. Compl. ¶¶ 1, 2, 24, 26. It has pled sufficient facts to satisfy the requirements of FAR § 31.205-47, and the remainder of FAR Subpart 31.2 does not otherwise prohibit reimbursement of the costs sought by Tolliver. Thus, Tolliver sufficiently pleads the requirements for allowability.

## CONCLUSION

For the foregoing reasons, the court finds sufficient legal basis and factual support for Tolliver's Second Amended Complaint to survive a motion to dismiss under RCFC 12(b)(6). Accordingly, the government's motion to dismiss is DENIED.

The government shall file its answer to Tolliver's Second Amended Complaint on or before November 21, 2018.

No costs.

It is so **ORDERED**.

                                                    s/ Charles F. Lettow
                                                    Charles F. Lettow
                                                    Senior Judge

---

[13]The government previously argued that litigation costs were not allocable to the contract, a requirement under FAR § 31.201-2 for allowability. *See* Compl. Attach. A, at 3 (Contracting Officer's claim denial letter); Hr'g Tr. 32:1-13. The government's latest motion to dismiss does not raise this issue separately, but it does note that the Contracting Officer's denial found that Tolliver's legal costs were not allocable to the contract. *See* Def.'s Mot. at 3; Compl. Attach. A, at 3-4.

Allocability requires a "sufficient 'nexus' [] between the cost and a government contract" and is "an accounting concept." *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1281, 1284 (Fed. Cir. 2002) (citing *Lockheed Aircraft Corp. v. United States*, 375 F.2d 786, 794 (Ct. Cl. 1967)). The cost need not "directly benefit the government's interest for the cost to be allocable," and there is no basis "to embark on an amorphous inquiry into whether a particular cost sufficiently 'benefits' the government so that the cost should be recoverable." *Id.* at 1284.