# In the United States Court of Federal Claims

No. 17-1763C

(Filed:  January 22, 2020)

```
*********************************  )
                                   )
THE TOLLIVER GROUP, INC.,          )
                                   )
                  Plaintiff,       )
                                   )
        v.                         )
                                   )
UNITED STATES,                     )
                                   )
                  Defendant.       )
                                   )
*********************************  )
```

Contractor's claim for partial
reimbursement of legal fees incurred in
successful defense of *qui tam* suit;
application of the *Spearin* doctrine;
equitable adjustment; FAR Part 31

Walter Brad English, Maynard, Cooper & Gale, P.C., Huntsville, Alabama, for plaintiff.
With him on the briefs were Emily J. Chancey and Michael W. Rich, Maynard, Cooper & Gale,
P.C., Huntsville, Alabama.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United
States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were
Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr.,
Director, and Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division,
United States Department of Justice, Washington, D.C.  Of counsel was James M. Ives,
Litigation Attorney, General Litigation Branch, United States Army Legal Services Agency, Fort
Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Senior Judge.

At issue in this disputed contract case is a very unusual potential application of the
*Spearin* doctrine, which has its inception in *United States v. Spearin*, 248 U.S. 132 (1918) (op.
for the Court by Brandeis, J).  Plaintiff, The Tolliver Group, Inc. ("Tolliver"), entered into a
contract with the United States Army for production of a series of technical manuals.  Tolliver
has brought suit against the United States seeking reimbursement of legal fees it incurred
between 2014 and 2017 in successfully defending its performance under that contract against a
*qui tam* relator.

Tolliver filed its Second Amended and Restated Complaint ("Second Amended
Complaint") in this court on July 18, 2018.  *See* Pl.'s Second Am. & Restated Compl. ("Second

Am. Compl."), ECF No. 24.  The United States subsequently moved to dismiss the Second Amended Complaint, *see* Pl.'s Mot. to Dismiss, ECF No. 27, and this court denied that motion on October 26, 2018, *see Tolliver Group, Inc. v. United States*, 140 Fed. Cl. 520 (2018). Subsequently, after a period for discovery, the parties filed a Joint Stipulation of Facts, ECF No. 38,[1] and Tolliver and the United States submitted motions for summary judgment on September 23, 2019, *see* Pl.'s Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 41; Def.'s Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 42.  After briefing, *see* Pl.'s Response to Def.'s Mot. ("Pl.'s Resp."), ECF No. 43; Def.'s Response to Pl.'s Mot. ("Def.'s Resp."), ECF No. 44; Pl.'s Reply to Def.'s Resp. ("Pl.'s Reply"), ECF No. 45, a hearing was held on November 15, 2019, and the motions are ready for disposition.

The court concludes that the contract could not be performed as specified in the original Performance Work Statement ("PWS"), engendering changed conditions of performance as reflected in an agreed modification to the contract.  The imperfection in the original terms of performance was addressed and largely rectified by the modification, but that imperfection also directly constituted the basis of the *qui tam* suit.  Thus, the court concludes that Tolliver is entitled to equitable reimbursement of part of its costs in defending that suit.  Accordingly, Tolliver's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and the government's motion for summary judgment is DENIED.

## BACKGROUND[2]

The Army needed manuals that would provide military vehicle field users with current parts information and updated procedures for provisioning, maintaining, and overhauling its Hydrema 910 Mine Clearing Vehicle.  *See* Joint Stip. ¶ 6.  To meet that need, the Army awarded Task Order 10 to DRS Technical Services, Inc. on August 26, 2011, Joint Stip. ¶ 1, as a fixed-price, level-of-effort contract requiring the contractor to develop and deliver technical manuals for the Army's mine clearing vehicle, Joint Stip. ¶¶ 4, 5.  The contract contemplated 29,240 hours of labor divided among nine labor categories and placed a ceiling on labor costs at approximately $1.41 million.  *See* Pl.'s Mot. App. at A4.  It also contained an unfunded option for an additional 8,568 hours after the first year of performance.  *See id.* at A6.

Task Order 10 required the contractor to submit a series of preliminary technical manuals for review by several entities within the Army.  Joint. Stip. ¶¶ 8, 9.  Once the Army had completed review and revision of the preliminary technical manuals, the contractor was to provide a final reproducible copy of the manuals, incorporating any edits or revisions.  Joint Stip. ¶ 10.  Importantly, to aid the contractor in developing the manuals without having to engage in

---

[1] The stipulations number 27 and will be cited as "Joint Stip." followed by the paragraph number.

[2] The recitations that follow do not constitute findings of fact by the court.  Instead, the recited factual elements are taken from the parties' joint stipulation of facts, the complaint, motions, appended exhibits, and judicial notice of prior relevant decisions in this and other courts.  No factual disputes are involved.

extensive reverse engineering, the contract's PWS required the Army to provide certain government-furnished information to the contractor, including a technical data package with engineering drawings from the manufacturer of the mine clearing vehicle and commercial off-the-shelf manuals.  Joint Stip. ¶¶ 11, 12.  Despite its obligation to do so, however, the Army never obtained, and thus never provided, the technical data package from the manufacturer.  Joint Stip. ¶¶ 13, 14.  Fully aware that the technical data package had not been, and could not be, provided to the contractor as Task Order 10 required, the Army nonetheless directed the work to proceed.  *See* Joint Stip. ¶ 15.

Tolliver assumed the Task Order 10 contract through novation on September 25, 2012, Joint Stip. ¶ 3, and endeavored to perform without the technical data package, Joint Stip. ¶ 14.  On April 23, 2013, after Tolliver had worked on the contract for approximately seven months, the Army issued Modification 8, an amendment to the contract that changed the terms of performance by removing the government's obligation to provide the technical data package.  Joint Stip. ¶¶ 17, 18.  In addition, Modification 8 prospectively converted Task Order 10 from a firm-fixed-price, level-of-effort contract to a firm-fixed-price contract at an increased cost of approximately $6.45 million.  *See* Joint Stip. ¶ 18; Def.'s Mot. App. at A28.

The Army's failure to provide the technical data package meant that the contract could not be performed as specified in the original PWS.  Although Modification 8 to the contract resolved that problem, the imperfection in the PWS generated a burdensome complication for Tolliver by providing the basis for the *qui tam* action that was filed by a relator.  On April 15, 2014, Robert Searle filed an action against Tolliver under the False Claims Act, 31 U.S.C. §§ 3729-3731, in the United States District Court for the Eastern District of Virginia styled *United States of America ex rel. Robert C. Searle v. DRS Technical Services, et al.*, No. 1:14-cv-00402.  Joint Stip. ¶ 19.  Mr. Searle, who apparently had been employed by a subcontractor for one of Tolliver's contractor-predecessors before Tolliver assumed the contract by novation, *see* Hr'g Tr. 24:18 to 25:10 (Nov. 15, 2019),[3] asserted that Tolliver violated the False Claims Act while performing Task Order 10 during the period before Modification 8 became effective by certifying compliance with the technical data package despite having never received that package, *see United States ex rel. Searle v. DRS Tech. Servs.*, No. 1:14-cv-00402, 2015 WL 6691973, at *1 (E.D. Va. Nov. 2, 2015).  While apparently recognizing from the outset that the *qui tam* action lacked merit, *see* Hr'g Tr. 29:22 to 31:2, the government declined, as a matter of general policy, to intervene or to move to dismiss the relator's case either at trial or on appeal, *see* Joint Stip. ¶¶ 23, 24.  Consequently, Tolliver undertook defending its performance in litigation.  Eventually, the district court dismissed the complaint, concluding that it lacked merit because "[the Army] intended to provide [Tolliver] with [the technical data package] for use in developing the manuals, it did not do so, it knew that it did not do so, and still instructed [Tolliver] to proceed with performance."  *Searle*, 2015 WL 6691973, at *1.[4]  With undeterred

---

[3]The transcript of the hearing held on November 15, 2019 will be subsequently cited without the date.

[4]In the district court, the relator had also made secondary claims that certain general purpose gloves and a gasket listed by the Army were not specified by the draft manuals prepared

intrepidity, Mr. Searle appealed the dismissal, requiring Tolliver further to incur legal fees in defending itself before the United States Court of Appeals for the Fourth Circuit, which in due course affirmed the district court's dismissal of the suit.  *See United States ex rel. Searle v. DRS Tech. Servs.*, 680 Fed. Appx. 163 (4th Cir. 2017).

After prevailing in the *qui tam* suit, on June 15, 2017, Tolliver submitted a claim to the contracting officer under the Contract Disputes Act, 41 U.S.C. §§ 7101 to 7109, for an equitable adjustment, seeking reimbursement of $195,889.87 under Task Order 10 for "allowable legal fees" incurred in defending the suit, Def.'s Mot. App. at A71; Joint Stip. ¶ 25.  The requested amount represented 80% of the $244,862.22 in attorneys' fees that Tolliver incurred in its successful defense of the False Claims Act suit.  Joint Stip. ¶ 26.[5]  In its claim, Tolliver expressly cited FAR § 31.205-47, Def.'s Mot. App. at A71, which sets forth cost principles for allowability of legal costs in commercial contracts, *see* FAR § 31.205-47.

Without disputing the dollar amount of the attorneys' fees Tolliver requested,[6] the contracting officer denied the claim in full on September 8, 2017, Joint Stip. ¶ 27, concluding

---

by Tolliver as required by the Army.  *Searle*, 2015 WL 6691973, at *5.  The court rejected those claims, ruling that the Army's listing was in error because the specified items were no longer available, and the Army had corrected that error.  *Id.*

[5]This percentage represents the maximum amount allowed by the Federal Acquisition Regulation ("FAR") for a successful defense of a False Claims Act suit.  FAR § 31.205-47 is captioned "Costs related to legal and other proceedings," and Subsection (e) of that Section provides in part:

> Costs incurred in connection with [successful defense of a proceeding under the False Claims Act, 31 U.S.C. § 3730] . . . may be allowable to the extent that:
>
> . . .
>
> (3) The percentage of costs allowed does not exceed the percentage determined to be appropriate considering the complexity of procurement litigation, generally accepted principles governing the award of legal fees in civil actions involving the United States as a party, and such other factors as may be appropriate.  Such percentage shall not exceed 80 percent.

FAR § 31.205-47(e).

[6]The contracting officer stated that the government did "not dispute the amount of legal fees incurred by [Tolliver] in its defense of the [False Claims Act] suit filed against it by relator Mr. Robert Searle.  Nor does the [g]overnment dispute that [Tolliver] incurred those fees defending itself against a lawsuit which was ultimately found by the [c]ourt to be without merit."  Pl.'s Mot. App. at A1432.

that Task Order 10 "is a firm fixed price order which contains no provision for [the government to assume the risk of legal costs]," Pl.'s Mot. App. at A1434. The final decision of the contracting officer gave no apparent consideration to Tolliver's claim for an equitable adjustment and concluded that the legal costs were not allowable under the cost principles of FAR Subpart 31.2 because they were neither allocable nor allowable within the terms of the contract. *See id.* at A1433-35. The decision found that the costs were not allocable because they were not incurred specifically for the contract and did not provide the government with a benefit. *Id.* Likewise, it found that they were proscribed by the fixed-price nature of the contract in the absence of a contract clause providing otherwise. *Id.*

After the contracting officer denied its claim, Tolliver brought suit in this court. The parties do not dispute Tolliver's performance of the contract or the propriety of Modification 8. The sole issue in this case is whether Tolliver may recover the legal fees it incurred to defend against the *qui tam* relator's claims concerning its performance under Task Order 10.[7]

## STANDARDS FOR DECISION

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[8] A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), which requires the movant to "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court may consider other materials in the record even if not cited by the parties. RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

---

[7]As the court noted in its prior opinion, "Tolliver does not dispute the propriety of Modification 8, and the government has not disputed Tolliver's performance of the contract." *Tolliver*, 140 Fed. Cl. at 524.

[8]Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia.*

When both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citation omitted).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id.*  "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

### B.  Equitable Adjustments

Under the *Spearin* doctrine, when the government provides a contractor with defective, erroneous, or promised but missing specifications, "the government is deemed to have breached the implied warranty that satisfactory contract performance will result from adherence to the specifications, and the contractor is entitled to recover costs proximately flowing from the breach." *Franklin Pavkov Constr. Co. v. Roche*, 279 F.3d 989, 994-95 (Fed. Cir. 2002) (citing *Spearin*, 248 U.S. at 136); *see also Essex Elestro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000).  The doctrine contemplates that the contractor is obliged to give the government timely notice of the defective or absent materials, allowing the government an opportunity to cure any deficiency. *Id.* at 998.  Where the contractor incurs additional time and costs because of the defective or absent specified materials, an equitable adjustment makes a contractor whole. *See Tobin Quarries, Inc. v. United States*, 84 F. Supp. 1021, 1023 (Ct. Cl. 1944).  The contractor bears the burden of establishing its costs to justify an equitable adjustment. *Daly Constr. Inc. v. Garrett*, 5 F.3d 520, 522 (Fed. Cir. 1993).

A contractor must establish three elements to merit an equitable adjustment to a contract: (1) liability; (2) causation; and (3) injury. *SAB Const. Inc., v. Unites States*, 66 Fed. Cl. 77, 84 (2005).  Equitable adjustment is not available, however, where the contractor has executed a release without reserving such claims. *See Raytheon Co. v. United States*, 96 Fed. Cl. 548, 553 (2011) (citing *B.D. Click Co., Inc. v. United States*, 614 F.2d 748, 756 (Ct. Cl. 1980)) ("As a general rule, a contractor that has executed a release (without a reservation of claims) is barred from seeking compensation for such claims based on events that occurred before the execution of the release.").  Absent a release, however, "[o]nce the contractor has proved the government's liability for the costs of added or changed contract work, the actual costs incurred by the contractor will provide the measure of the equitable adjustment to the contract price, if those incurred costs are reasonable." *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 245 (2005) (citation omitted).  Therefore, "the measure of an equitable adjustment is the 'difference between what it cost to do the work and what it would have cost it if the unforeseen conditions had not been encountered." *Shank-Artukovich v. United States*, 13 Cl. Ct. 346, 361 (1987) (quoting *Tobin Quarries*, 84 F. Supp. at 1023).

## ANALYSIS

"An action brought before the Court of Federal Claims under the [Contract Disputes Act] must be based on the same claim previously presented to and denied by the contracting officer." *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (quoting *Scott Timber Co.*

*v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). In the demand it submitted to the contracting officer, Tolliver put forth two distinct bases for its claim. First, Tolliver sought "an equitable adjustment . . . for allowable legal fees associated with [its successful defense of the *qui tam* suit]." Def.'s Mot. App. at A71. Second, the claim maintained that the legal fees "are allowable under the contract" and under FAR § 31.205-47. *Id.* Accordingly, any review of Tolliver's claims by this court must be confined to whether its legal fees are required as an equitable adjustment or allowable under FAR Part 31 and the contract. Because Tolliver's equitable adjustment claim is sufficient to decide this case, the court will not address the FAR allowability arguments put forward by the parties.[9]

## A. The Army's Imperfect Specifications

To prevail in obtaining an equitable adjustment, a contractor must show that the government breached the implied warranty that satisfactory contract performance will result from adherence to contractual specifications. *See Franklin Pavkov Constr. Co.*, 279 F.3d at 995. Here, the PWS in Task Order 10 specified that the Army would provide Tolliver with the technical data package and engineering drawings, enabling it to produce the manuals without reverse engineering the mine clearing vehicles. Yet, while the Army provided neither the technical data package nor the engineering drawings, it nevertheless "instructed [Tolliver] to perform under Task Order 10, notwithstanding the fact that it did not have [the technical data package]." *Searle*, 2015 WL 6691973, at *3.[10] The Army apparently recognized early that its inability to produce the technical data package would generate considerable additional work for Tolliver in the form of reverse engineering, and consequently implemented Modification 8,

---

[9]In its prior decision on the government's motion to dismiss, the court had discounted the viability of a claim for an equitable adjustment. *Tolliver Group*, 140 Fed. Cl. at 525. The context of that observation is important. That statement was made in reference to the argument that Tolliver was entitled to equitable adjustment because of the government's failure to intervene in the *qui tam* suit. *See id.* at n.6. As the court then observed, the government had no obligation to intervene and therefore its decision could not be considered a change to the contract that would justify an equitable adjustment. *Id.* This opinion is not inconsistent with that conclusion. Rather, the basis for an equitable adjustment as addressed by this opinion is not the government's declining to intervene in the suit, but rather the government's failure to provide Tolliver with the technical data package, thereby altering the conditions of performance and, among other things, leading to the *qui tam* suit—an argument which the court's prior opinion did not consider.

[10]Because *qui tam* relators prosecute not only their own case but also represent the United States, they bind the United States to any judgment they obtain, and therefore a district court's findings of fact in a *qui tam* action are *res judicata* against the government. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1329 (Fed. Cir. 2010) (citations omitted). Consequently, this court must treat as established and undisputed any fact found by the Eastern District of Virginia in the *qui tam* litigation involved here.

which not only removed the technical data package specification but "increased the value of the Task Order[] and extended the period of performance." *Id.*

In short, prior to Modification 8, the Army's failure to provide the technical data package represented an omission that prevented Tolliver from performing the contract as specified in the PWS. Modification 8 addressed the omission by significantly increasing the contract's value and lengthening the performance period, but it failed to rein in the forces set in motion by the absent technical data package in one significant respect: the *qui tam* suit. While it addressed the additional work that would be required to produce the manuals, Modification 8 did not contemplate the burden imposed on Tolliver of having to defend itself against a *qui tam* suit that stemmed from the government's failure to adhere to its obligations under the original contract. Therefore, even considering the changes implemented by Modification 8, the government's omission abrogated the implied warranty of satisfactory performance recognized by *Spearin* insofar as Tolliver's performance pre-Modification 8 was concerned.

Furthermore, regarding proximate causation, there can be little question that the government's actions produced the circumstances that ultimately led to the *qui tam* suit and thus the costs incurred defending against it. The *qui tam* suit relied on the contention that Tolliver violated the False Claims Act by continuing production of the manuals without the technical data package. *See Searle*, 2015 WL 6691973, at *1 ("Plaintiff . . . claims that [Tolliver] violated the F[alse Claims Act] by proceeding with the creation of Technical Manuals for the 910 MCV-Mine Clearing System under Task Order 10 of its contract with the Army without a government-furnished technical data package."). As the district court in the *qui tam* litigation emphasized, "the government was aware of, and even directed [by instructing Tolliver to proceed without the technical data package], the very issues about which [the *qui tam* relator] complains." *Id.* at *10. Because the absence of the technical data package triggered and served as the basis for the *qui tam* suit, the litigation and the legal fees Tolliver incurred to defend itself are attributable to the government's failure to provide the data. If the missing data had been provided, the *qui tam* suit could not have been brought. Therefore, the government's action is both the actual and proximate cause of the legal costs at issue here, and Tolliver has successfully shown the elements necessary to prevail in obtaining an equitable adjustment to account for its legal fees.

The legal fees required to defend against the *qui tam* suit were mostly incurred after Modification 8 went into effect on April 23, 2013, but they nonetheless related to the circumstances that existed prior to Modification 8.[11] The *qui tam* relator's claim would of course have been rendered ineffective after Modification 8 was adopted, eliminating the technical data package provision altogether. Therefore, the *qui tam* suit could only reasonably

---

[11]Prospective in nature, the stated purpose of Modification 8 was "to convert the task order to a Firm-Fixed Price order for the completion of the Technical Manuals." Pl.'s Br. App. at A1438. Moreover, the modification stated that "[a]ll other [t]erms and conditions of the task order, except those addressed by this modification, remain unchanged and in full force and effect," *id.* at A1439, and, notably, none of the terms it addressed in any way concerned release of liability for claims Tolliver may have had.

relate to the period before Modification 8 when Tolliver worked to produce the manuals, at the government's direction, without the technical data package.

### B.  Filing Period

Pursuant to FAR § 52.243-1, a standard contract clause governing changes to fixed-price contracts and appearing in Task Order 10 prior to Modification 8, a contractor "must assert its right to an adjustment . . . within 30 days from the date of receipt of the written order."  FAR § 52.243-1(c); *see also* Def.'s Mot. App. at A19 (Task Order 10 incorporating FAR § 52.243-1 by reference).  Tolliver submitted its claim to the contracting officer on June 15, 2017, Joint Stip. ¶ 25, after the Fourth Circuit had ruled in its favor in the *Searle* litigation on February 23, 2017. Tolliver thus filed its claim 112 days after the *Searle* litigation become final, not taking into account any possibility that *Searle* might seek reconsideration or further review of the Fourth Circuit's decision.  This time limitation in FAR § 52.243-1, however, is understood as a means for protecting against prejudice caused by late filings; therefore, it is liberally construed in favor of contractors and is not enforced except when the lack of timely notice has prejudiced an agency's ability to defend the claim.  *See, e.g.*, *Gulf & Western Indus., Inc. v. United States*, 6 Cl. Ct. 742, 755 (1984) (finding that a contractor's failure to timely submit a claim was no bar because the government could not show prejudice); *see also* 1 West's Fed. Admin. Prac. § 650 n.9.

There is no indication here that the government suffered prejudice due to the late filing of Tolliver's claim.  Furthermore, it is not evident how Tolliver could have complied with the 30-day requirement because it had no way of forecasting when the *qui tam* suit would run its course. Therefore, strict application of the 30-day filing requirement is particularly inapposite in these circumstances.

### C.  Tolliver Did Not Release its Claims

As noted previously, an equitable adjustment is not available if the contractor executes a release without reserving its claims. *Raytheon Co.*, 96 Fed. Cl. at 553.  In accepting Modification 8, however, Tolliver did not release any claims it might have accrued up to that time.

### D.  The Government's Asserted Defense

The government resists any possibility of recovery by Tolliver as a matter of law, arguing that the firm-fixed-price, level-of-effort contract at issue is not subject to adjustment based on Tolliver's cost experience.  *See* Def.'s Mot. at 5-10.  If Tolliver had been able to perform under the contractual specifications, the government's argument might have merit.  *See Alleghany Teledyne Inc. v. United States*, 316 F.3d 1366, 1376 n.7 (Fed. Cir. 2003) ("Because fixed[-]price contracts do not contain a method for varying the price of the contract in even unforeseen circumstances, they assign the risk to the contractor that the actual cost of performance will be higher than the price of the contract."); FAR § 16.201 ("Unless otherwise specified in the contract, the ceiling price or target price is subject to adjustment only by operation of contract clauses providing for equitable adjustment or other revision of the contract price under stated circumstances.").

The asserted defense, however, completely ignores that the contract could not be performed in accord with the specifications in the PWS. This circumstance has a parallel to the contract at issue in *Spearin* because the contract there at issue also was a fixed-price contract, *see Spearin*, 248 U.S. at 61, and the Supreme Court allowed an equitable adjustment precisely because of the implied warranty that if the contractual specifications were complied with, performance would have been satisfactory, *id.* The government's defense based on the fixed-price nature of the contract here is thus unavailing.

### E.  Third-Party Claims and the Spearin Doctrine

A limit on the reach of the *Spearin* doctrine bars contractors from recovering the costs of defending themselves from third-party claims. The basis of recovery undergirding the *Spearin* doctrine is the creation of an implied warranty, and "such a warranty does not extend as far as third-party claims." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1345 (Fed. Cir. 2008) (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 424-25 (1996)). The Supreme Court held in *Hercules* that a chemical manufacturer charged with producing Agent Orange for the government could not recover the costs it incurred defending and settling lawsuits brought against it by Vietnam veterans whose health was affected by exposure to the defoliant chemical because "[n]either the warranty nor *Spearin* extends that far." 516 U.S. at 425.

Even so, the *Hercules* limitation does not apply in this case because a *qui tam* suit under the False Claims Act, such as the one Tolliver was obliged to defend, is not a third-party claim. The *qui tam* provision in the False Claims Act was designed to permit private citizens to bring an action on behalf of the government, the idea being "to have 10,000 lawyers in America . . . assisting the Attorney General of the United States in digging up war frauds." *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 94 (1992) (internal quotation and citation omitted). Resting on this premise, a wide consensus exists among the circuits that in *qui tam* litigation "it is the government, not the individual relator, who is the real plaintiff in the suit." *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1213 (7th Cir. 1995). *See also United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994) ("It is clear . . . that in a *qui tam* action, the government is the real party in interest.) (citation omitted); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993) ("[A]lthough *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains in interest in any such action.") (quoting *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990)); *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 50 (4th Cir. 1992) ("We hold that the United States is the real party in interest in any False Claims Act suit, even where it permits a *qui tam* relator to pursue the action on its behalf.").

It follows that, because the United States is considered the actual plaintiff in *qui tam* litigation, such suits cannot be classified as third-party claims for purposes of applying the *Spearin* doctrine. Therefore, Tolliver's recovery of legal fees is not precluded by the *Hercules* limitation because the costs Tolliver seeks to recover were incurred to defend against a *qui tam* suit in which the government, despite its decision not to intervene, was the real plaintiff, rather than some third party.

*F.   Reasonableness of Adjustment*

Having established that the government is liable to Tolliver for an equitable adjustment, the court must next determine the amount of that adjustment.  The claimed reimbursement amount is a percentage of the sum of the actual costs incurred by Tolliver in defending the *qui tam* suit, assuming those costs are reasonable.  *See George Sollitt Constr. Co.*, 64 Fed. Cl. at 245. In their motions for summary judgment, however, the parties spilt little ink addressing the reasonableness of the attorneys' fees at issue.  Although the contracting officer appears not to have disputed the amount of defense costs Tolliver claimed, this court must review the contracting officer's final decision *de novo* under the Contract Disputes Act.  *See* 41 U.S.C. § 7104(b)(1), (4).  Precedents binding on this court establish that a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision, but instead the contractor bears "the burden of proving the fundamental facts of liability and damages *de novo*." *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994).  Therefore, this court cannot enter judgment based solely on the contracting officer's acceptance, or decision not to address, the reasonableness of Tolliver's legal fees.  Accordingly, the court will defer entering any judgment until the parties have had sufficient opportunity to address the matter of reasonableness of the fees incurred.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment is DENIED and Tolliver's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

On or before February 14, 2020, the government shall file any objections to the reasonableness of the amount of Tolliver's claimed attorneys' fees.  Tolliver shall file its reply on or before February 28, 2020.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge