# In the United States Court of Federal Claims

No. 17-1763C

(Filed: August 17, 2022)

| | |
|---|---|
| **THE TOLLIVER GROUP, INC.,**<br>Plaintiff,<br>**v.**<br>**UNITED STATES,**<br>Defendant. | Claim for partial reimbursement of legal fees in successful defense of *qui tam* suit; FAR Part 31 |

W. Brad English and Emily J. Chancey, Maynard, Cooper & Gale, P.C., Hunstville, Alabama, for plaintiff.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Pending before the court are the parties' renewed cross-motions for summary judgment following remand from the United States Court of Appeals for the Federal Circuit. *See Tolliver Grp., Inc. v. United States*, 20 F.4th 771 (Fed. Cir. 2021). The salient question presented is whether plaintiff may recover legal fees incurred in defending its contract performance in a *qui tam* suit brought under the False Claims Act. The court concludes (1) that the cost principles and procedures in Federal Acquisition Regulation ("FAR") Subpart 31.2 applied to the contract during the period of performance prior to modification and (2) that plaintiff's request for attorneys' fees satisfies the allowability standards in that subpart. Accordingly, the court GRANTS plaintiff's renewed motion for summary judgment ("Pl.'s Mot."), ECF No. 75, and DENIES the government's renewed cross-motion for summary judgment ("Def.'s Cross-Mot."), ECF No. 78.

## BACKGROUND[1]

### *A. Contract Award and Modification*

On August 26, 2011, defendant, the United States Army ("Army" or "government"), awarded Task Order 10 under Contract No. W56HZV-09-A-A902 to DRS Technical Services, Inc., Joint Stip. ¶ 1, ECF No. 38, which novated to plaintiff, the Tolliver Group, Inc. ("Tolliver"), on September 25, 2012, Joint Stip. ¶ 3. The purpose of Task Order 10 was to create and deliver technical manuals for the 910 MCV-Mine Clearing System. Joint Stip. ¶ 5. The order's Performance Work Statement required the Army to provide a technical data package to Tolliver from the original equipment manufacturer, Joint Stip. ¶¶ 10-12, although Tolliver was not required to rely on that information, *see United States ex rel. Searle v. DRS Tech. Servs.*, No. 1:14-cv-402, 2015 WL 6691973, at *3 (E.D. Va. Nov. 2, 2015), *aff'd*, 680 Fed. Appx. 163 (4th Cir. 2017).[2]

The Army's contracting officer representative responsible for Task Order 10 neither obtained nor provided the technical data package. Joint Stip. ¶¶ 13-14. The Army directed Tolliver to proceed without the technical data package, *see* App. to Pl.'s Mot. for Summ. J. ("Pl.'s App.") at A1513 (Decl. of Robert Woods ¶ 7 (Sep. 23, 2019)), ECF No. 41-1, which plaintiff did, Joint Stip. ¶ 15. Subsequently, Task Order 10 was modified on April 23, 2013, by Modification 8, which converted it from a fixed-price, level-of-effort developmental contract to a pure firm-fixed-price contract and removed the technical data package requirement from the Performance Work Statement. Joint Stip. ¶¶ 4, 17-18.

### *B. The* Qui Tam *Litigation and Resulting Claim to the Contracting Officer*

"On April 15, 2014, Robert Searle filed a *qui tam* suit against Tolliver under the False Claims Act in the United States District Court for the Eastern District of Virginia." Joint Stip. ¶ 19. Mr. Searle's *qui tam* action claimed that Tolliver violated the False Claims Act by performing without the technical data package and by deviating from certain military standards and Army regulations in the final version of the technical manuals that it created. *See Searle*, 2015 WL 6691973, at *1. The District Court entered summary judgment in Tolliver's favor on November 2, 2015, Joint Stip. ¶ 20, which Mr. Searle appealed to the United States Court of Appeals for the Fourth Circuit, Joint Stip. ¶ 21. The Court of Appeals affirmed the District

---

[1] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending motion and reflect matters drawn from the complaint, the parties' briefs, and documents appended to the complaint and briefs.

[2] Because *qui tam* relators prosecute not only their own case but also represent the United States, they bind the United States to any judgment they obtain, and therefore a district court's findings of fact in a *qui tam* action are *res judicata* against the government. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1329 (Fed. Cir. 2010). Consequently, this court must treat as established and undisputed any fact found by the Eastern District of Virginia in the *qui tam* litigation underpinning this action.

Court's decision on February 23, 2017. Joint Stip. ¶ 22; *see also Searle*, 680 Fed. Appx. at 168. The United States declined to intervene or move to dismiss the *qui tam* suit at trial or on appeal, Joint Stip. ¶¶ 23-24, although it appears to have "recogniz[ed] from the outset that the *qui tam* action lacked merit," *Tolliver Grp., Inc. v. United States*, 146 Fed. Cl. 475, 480 (2020) (citing Hr'g Tr. 29:22 to 31:2 (Nov. 15, 2019), ECF No. 48), *vacated and remanded*, 20 F.4th 771.

On June 15, 2017, Tolliver submitted a certified claim to the Army contracting officer seeking $195,899.[78], Joint Stip. ¶ 25, which it represented was 80% of the attorneys' fees that it incurred in defending itself in the *qui tam* action, Joint Stip. ¶ 26.[3] "In its claim, Tolliver expressly cited [48 C.F.R. ("FAR")] § 31.205-47, which sets forth cost principles for allowability of legal costs in commercial contracts." *Tolliver Grp.*, 146 Fed. Cl. at 481 (internal citations omitted). On September 8, 2017, the contracting officer denied Tolliver's claim in full. Joint Stip. ¶ 27. The contracting officer determined that Tolliver's litigation costs were not allocable to Task Order 10 "because they were not incurred specifically for the contract and did not provide the government with a benefit," and "the fixed-price nature of the contract" proscribed such reimbursement "in the absence of a contract clause providing otherwise." *Tolliver Grp.*, 146 Fed. Cl. at 481 (citing Pl.'s App. at A1433-35).

*C. Claims Court Litigation and Appeal Regarding Tolliver's Claim*

Tolliver brought suit in this court under 41 U.S.C. § 7104(b)(1) on November 9, 2017, alleging that the government had made a constructive change to Task Order 10 by requiring Tolliver to proceed without the technical data package and that it was entitled to recover 80% of its legal fees related to the *qui tam* action under FAR § 31.205-47. *See generally* Compl., ECF No. 1. The court issued two opinions relevant to the parties' present motions.

First, on October 26, 2018, the court denied the government's motion to dismiss Tolliver's complaint for failure to state a claim. *See Tolliver Grp., Inc. v. United States*, 140 Fed. Cl. 520 (2018). The court held that FAR § 31.205-47 applied to Task Order 10 before Modification 8 because (1) FAR Part 31 applies to a fixed-price contract when cost analysis is performed, which was required under Task Order 10 before Modification 8, (2) Modification 8 used forward-looking language and lacked retroactive effect over the pre-modification period of contract performance, and (3) under the *Christian* doctrine,[4] FAR § 31.205-47 was incorporated into Task Order 10. *Id.* at 526-29.

Second, on January 22, 2020, the court denied the government's motion for summary judgment, while granting in part and denying in part Tolliver's summary judgment motion. *See Tolliver Grp.*, 146 Fed. Cl. at 479. The court held, relying on *United States v. Spearin*, 248 U.S. 132 (1918), that "the contract could not be performed as specified in the original Performance

[3] A nine-cent discrepancy appears between the amount set out in the parties' joint stipulation, Joint Stip. ¶ 25 ($195,899.87), and the amount of Tolliver's claim, Pl.'s App. at A1242 ($195,899.78). The court applies the amount stated in the claim.

[4] *See G. L. Christian & Assocs. v. United States*, 160 Ct. Cl. 1, 15-16 (1963).

Work Statement . . . , engendering changed conditions of performance" that "directly constituted the basis of the *qui tam* suit" and entitled Tolliver to recover part of its attorneys' fees. *Id.* In doing so, the court declined to address Tolliver's allowability claim under FAR Subpart 31.2 and instead held that the Army had breached the implied warranty of performance. *Id.* at 483-84.

After subsequent opinions denying the government's motion for reconsideration and ruling that Tolliver's attorneys' fees were reasonable, the government appealed the court's decisions. *See Tolliver Grp.*, 20 F.4th 771. Because Tolliver had not explicitly raised the implied warranty of performance and the *Spearin* doctrine in its claim to the Army contracting officer, the Court of Appeals held that this court lacked jurisdiction to decide a claim on those grounds. *Id.* at 776-77. This court's decision was vacated on that jurisdictional ground and remanded "for such further proceedings as may be appropriate." *Id.* at 778. This court ordered renewed briefing to clarify which issues the parties wished to pursue. *See* Order of May 6, 2022, ECF No. 74. The parties again cross-moved for summary judgment, and the matter is fully briefed. *See* Pl.'s Mot.; Def.'s Cross-Mot.; Pl.'s Reply and Resp., ECF No. 81; Def.'s Reply, ECF No. 82.

## STANDARDS FOR DECISION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of Rules of the Court of Federal Claims ("RCFC"). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[5] A genuine dispute exists when the finder of fact may reasonably resolve the dispute "in favor of either party." *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court "may consider other materials in the record" even if not cited by the parties. *See* RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "The fact that both parties have moved for

[5] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id.* "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

## ANALYSIS

"An action brought before the Court of Federal Claims under the Contract Disputes Act must be based on the same claim previously presented to and denied by the contracting officer." *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (brackets omitted) (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). Here, Tolliver's claim to the contracting officer sought "$195,889.78 for allowable legal fees associated with defending itself" in the *qui tam* litigation based on grounds of equitable adjustment and the cost principles and procedures in FAR Part 31, specifically FAR § 31.205-47, "Costs related to legal and other proceedings." Pl.'s App. at A1242. On remand, Tolliver confines its argument to FAR Part 31; thus, the court will focus on the allowability analysis presented in FAR § 31.201-2, "Determining allowability."

The parties' cross-motions for summary judgment raise multiple seemingly threshold issues to resolve before addressing allowability, *viz.*, whether a firm-fixed-price, level-of-effort developmental contract supports cost principles and procedures and whether the *Christian* doctrine incorporates FAR Subpart 31.2. *Compare* Pl.'s Mot. at 11-16, *with* Def.'s Cross-Mot. at 11-19. While the answers to such questions could prove dispositive, these contentions are actually part of the allowability analysis. FAR § 31.201-2(a) indicates that "[a] cost is allowable only when" it is (1) reasonable, (2) allocable to the contract, (3) compliant with pertinent accounting standards, (4) *compliant with the terms of the contract*, and (5) compliant with limitations found in FAR Subpart 31.2. The court will therefore address the parties' contentions concerning applicability of cost principles within the context of its allowability analysis. It will, however, first address the terms of the contract.

### *A. Contract Terms*

Tolliver asserts that reimbursement of its legal fees under FAR § 31.205-47 is consistent with the terms of Task Order 10 because (1) the risk of incomplete performance was allocated to the government pre-modification, rendering pre-modification Task Order 10 a cost-type contract, Pl.'s Mot. at 12-14, (2) the prospective language of Modification 8 limited its scope to post-modification contract performance, *id.* at 11-12, and (3) the *Christian* doctrine incorporated FAR Part 31 cost principles into Task Order 10 (*i.e.*, the contract implicated FAR Subpart 31.2, contracts with commercial organizations, the government was required to perform cost analysis, and Task Order 10 was a developmental contract), *id.* at 14-16.

The government contends that cost principles and procedures are inconsistent with the terms of Task Order 10 because (1) Task Order 10 was a firm-fixed-price contract before and after Modification 8, Def.'s Cross-Mot. at 6-8, 11-14; Def.'s Reply at 2,[6] (2) there is no

---

[6] Regardless of this contention, the government appears to concede that Modification 8 lacked retroactive effect to cover the pre-modification period of performance and instead only

provision in Task Order 10 to permit a price adjustment for contractor costs incurred beyond the contract price, Def.'s Cross-Mot. at 8-9, (3) the required cost analysis under Task Order 10 served to assess the reasonableness of the contract price, not to assess the allowability of incurred costs, *id.* at 8 n.5, 9-11, (4) there is no foundation for incorporating FAR Part 31 cost principles and procedures into Task Order 10 using the *Christian* doctrine, *id.* at 17-19, and (5) permitting cost principles and procedures under Task Order 10 would negate the policy purposes of allocating risk to the contractor in firm-fixed-price contracts, *id.* at 14-17.

The parties' arguments focus on two questions: whether the cost principles and procedures of FAR Part 31 would have applied to Task Order 10 pre-modification and whether FAR § 31.205-47 would be incorporated into Task Order 10 in the absence of an express contract provision.

*1. Applicability of Cost Principles and Procedures to Pre-modification Task Order 10*

The parties' disagreement about whether pre-modification Task Order 10 was a cost-type contract or a pure firm-fixed-price contract overlooks that FAR Part 31 cost principles and procedures would apply in either scenario. If Task Order 10 operated as a cost-type contract pre-modification, then cost principles and procedures would apply as a matter of regulation. As a firm-fixed-price, level-of-effort contract, "[t]he product of the contract" was "the results achieved through application of the required level of effort," and "payment [was] based on the effort expended rather than on the results achieved." FAR § 16.207-2; *see also McDonnell Douglas Corp. v. United States*, 37 Fed. Cl. 295, 299 n.5 (1997) ("[F]ixed-price level of effort contracts . . . operate more like cost-reimbursement contracts with limitation of costs clauses. The [g]overnment sets contract prices based on labor hours and when that price is reached, the contractor is relieved of any further liability."). If Tolliver was reimbursed for effort expended as contrasted to results achieved, then pre-modification Task Order 10 did indeed operate as a cost-type contract with the government reimbursing Tolliver's labor and other related costs. *See* Pl.'s App. at A2 (outlining price ceiling under Task Order 10 to reimburse labor and travel).

Alternatively, if Task Order 10 was always a pure firm-fixed-price contract, the FAR would still dictate application of cost principles and procedures. "Fixed-price contracts are not categorically immune from applicability of cost principles." *Tolliver Grp.*, 140 Fed. Cl. at 526. The FAR indicates when a fixed-price contract is subject to cost principles. First, FAR Part 31 "shall be used in the pricing of fixed-price contracts, subcontracts, and modifications to contracts and subcontracts whenever (a) *cost analysis is performed*, or (b) a fixed-price contract clause requires the determination or negotiation of costs." FAR § 31.102 (emphasis added).

---

prospectively changed Task Order 10 from a firm-fixed-price, level-of-effort developmental contract to a pure firm-fixed-price contract. *See* Def.'s Cross-Mot. at 2-3, 12-13 ("Task Order 10 unambiguously states that (prior to Modification 08) it is a 'firm-fixed-price level of effort' contract."); s*ee also Tolliver Grp.*, 140 Fed. Cl. at 527-28 ("By its express terms, Modification 8 sets out no indication that it was to have retroactive effect, but rather uses forward-looking language, which generally implies that a modification lacks retroactive effect.").

Second, "[a] firm-fixed-price, level-of-effort term contract is suitable for investigation or study in a specific research and *development* area." FAR § 16.207-2 (emphasis added). FAR Subpart 31.2 cost principles "shall be used in pricing . . . *developmental* . . . contracts . . . with commercial organizations whenever cost analysis is performed as required by 15.404-1(c)." FAR § 31.103(a) (emphasis added). As incorporated into Task Order 10, Pl.'s App. at A234, FAR § 15.404-1(c) explains that "[t]he [g]overnment may use various cost analysis techniques and procedures to ensure a fair and reasonable price, given the circumstances of the acquisition. Such techniques and procedures include," *inter alia*, "[v]erification that the offeror's cost submissions are in accordance with the contract cost principles and procedures *in [FAR P]art 31*." FAR § 15.404-1(c)(2)(i), (iv) (emphasis added).

Third, "[c]ost analysis shall be used to evaluate the reasonableness of individual cost elements when certified cost or pricing data are required." FAR § 15.404-1(a)(3). "The contracting officer shall obtain certified cost or pricing data" when "none of the exceptions in 15.403-1(b) applies." FAR § 15.403-4(a)(1). Task Order 10 pre-modification was a firm-fixed-price, level-of-effort, developmental contract. *See* FAR § 16.207-2; *see also Tolliver Grp.*, 140 Fed. Cl. at 526. Task Order 10 required cost analysis because none of the exceptions in FAR § 15.403-1(b) applied to the developmental nature of the technical manuals in the contract.

Because cost analysis was required, the cost principles and procedures of FAR Part 31, specifically FAR Subpart 31.2, were applicable to the pre-modification contract. *See* FAR § 31.102. The government contends that such a holding would "upend the nature of the firm-fixed-price contract" and "undermine the intent of the parties in contracting, the nature of the contract type, and the purpose for which firm-fixed-price contracts are utilized in government contracting." Def.'s Cross-Mot. at 16. This is incorrect. The FAR itself mandates the court's holding, which is a reading of the FAR applied to Task Order 10—nothing more.

*2. Incorporation of FAR § 31.205-47 to Task Order 10*

The parties acknowledge directly or indirectly, as the court previously observed, that "neither an express nor implied term allowing cost reimbursement appears in the contract." *Tolliver Grp.*, 140 Fed. Cl. at 529. "For a court to incorporate a clause into a contract under the *Christian* doctrine, it generally must find (1) that the clause is mandatory; and (2) that it expresses a significant or deeply ingrained strand of public procurement policy." *K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719, 724 (Fed. Cir. 2018) (discussing *Christian*, 160 Ct. Cl. at 11-17). "In this case, cost principles apply by operation of law if the contract required a cost analysis [and] if reimbursement of legal fees claimed by Tolliver represents a significant or deeply ingrained aspect of a fixed-price, level-of-effort development contract." *Tolliver Grp.*, 140 Fed. Cl. at 529. As demonstrated *supra*, cost principles and procedures, specifically FAR § 31.205-47, were mandatory to pre-modification Task Order 10 because the government was required to conduct cost analysis as part of Tolliver's level-of-effort contract. The question then is whether cost principles and procedures, specifically FAR § 31.205-47, are significant or deeply ingrained in public procurement policy. The court responds in the affirmative.

Since its inception in 1983, the FAR has included, in one form or another, cost principles and procedures related to False Claims Act proceedings. *See* Establishing the Federal

Acquisition Regulation, 48 Fed. Reg. 42,102, 42,327 (Sep. 19, 1983) (to be codified at 48 C.F.R. § 31.205-47); *see also Brownlee v. Dyncorp.*, 349 F.3d 1343, 1349-51 (Fed. Cir. 2003) (discussing the regulatory history of FAR § 31.205-47 generally and its application to criminal convictions of fraud specifically). Decades of practice demonstrate the deeply ingrained nature of this regulation. *See, e.g.*, *S.J. Amoroso Const. Co., Inc. v. United States*, 12 F.3d 1072, 1076 (Fed. Cir. 1993) (observing that regulations implementing policies of the Buy American Act before and after the enactment of the FAR in 1983 had "reflected this significant, statutory policy for over 25 years"). Furthermore, FAR § 31.205-47 and its general coverage of False Claims Act costs have survived decades of legislation, persuasive evidence that "Congress . . . ha[s] approved the existing regulatory approach." *Brownlee*, 349 F.3d at 1354 (citing *Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 983 (1986) ("[A] 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974))) and *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1355 (Fed. Cir. 1998)).

In short, the court reads FAR § 31.205-47 into pre-modification Task Order 10 as a mandatory element—FAR Part 31's cost principles and procedures are mandated by regulation because the Army was required to conduct cost analysis on Tolliver's level-of-effort, developmental contract—and such principles are deeply ingrained in procurement policy as indicated by decades of their implementation in the regulatory framework of federal procurement.

*B. Reasonableness, Allocability, Accounting Standards, and Limitations in FAR Subpart 31.2*

Having ascertained that FAR Part 31's cost principles and procedures apply to pre-modification Task Order 10 and that FAR § 31.205-47 should be read into the contract under the *Christian* doctrine, the court proceeds to the remaining allowability analysis factors outlined in FAR § 31.201-2(a).

"A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business." FAR § 31.201-3(a). Relying on *Tolliver Group, Inc. v. United States*, 149 Fed. Cl. 304, 305 (2020), Tolliver argues that its request for $195,889.78—representing 80% of its attorneys' fees incurred in defending itself in the *qui tam* action—is "eminently reasonable" because its fees were well documented, in line with prevailing rates for the D.C. metro area, and supported by declarations by two knowledgeable, outside attorneys. *See* Pl.'s Mot. at 8-10. The government's response is silent on the reasonableness of attorneys' fees. In relevant part, the court has already ruled once in this case that Tolliver's requested fees are reasonable for the reasons cited in Tolliver's motion. *See Tolliver Grp.*, 149 Fed. Cl. at 307-08 (citing *Rumsey v. Dep't of Justice*, 866 F.3d 1375, 1379 (Fed. Cir. 2017) (explaining that movant's burden is "routinely satisf[ied]" by the "[s]ubmission of invoices and billing records"); *Morris v. Sec'y of Dep't of Health and Human Servs.*, 20 Cl. Ct. 14, 29 (1990) (explaining that the court may look to declarations made by other attorneys about the reasonableness of fees in a geographic area); and *Lost Tree Village Corp. v. United States*, 135 Fed. Cl. 92, 96 (2017) ("Fees incurred and paid by a client at an agreed rate are presumptively reasonable because in reaching agreement, lawyer and client have already considered and weighed all the relevant factors.") (brackets and quotation marks omitted)). The

court incorporates its prior decision here and concludes that Tolliver's requested fees are indeed reasonable.

"A cost is allocable if it is assignable or chargeable to one or more cost objectives on the basis of relative benefits received or other equitable relationship."  FAR § 31.201-4; *see also Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1281 (Fed. Cir. 2002) ("[T]he concept of allocability is addressed to the question whether a sufficient 'nexus' exists between the cost and a government contract." (citing *Lockheed Aircraft Corp. v. United States*, 179 Ct. Cl. 545, 558-60 (1967))).  In particular,

> [a] cost is allocable to a [g]overnment contract if it (a) [i]s incurred specifically for the contract; (b) [b]enefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; *or* (c) [i]s necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.

FAR § 31.201-4 (emphasis added).  Tolliver asserts that its attorneys' fees are allocable to Task Order 10 because, but for the government's direction to proceed without the government furnished information required under the Performance Work Statement, there would have been no *qui tam* suit against which to defend itself.  Pl.'s Mot. at 6, 16-17.  Moreover, plaintiff argues that it was essential to the continued operation of its business to avoid incurring a claimed multi-million-dollar judgment in the *qui tam* action.  *See* Pl.'s Reply and Resp. at 4.  The government argues that Tolliver fails to demonstrate how it satisfies any of the requirements of FAR § 31.201-4, but it erroneously presents those requirements in the conjunctive instead of the disjunctive.  *See* Def.'s Cross-Mot. at 20-21.  Instead, Tolliver need only satisfy one of those criteria to prove allocability.  Here, there is no genuine dispute that it incurred its legal fees "specifically for the contract" and to preserve "the overall operation of [its] business."  But for the Army's direction to proceed without the technical data package, Tolliver would not have been open to the *qui tam* suit that risked a large monetary judgment.  The fees are therefore allocable to Task Order 10.  *See Lockheed*, 179 Ct. Cl. at 558 ("[I]t is fair to allocate to government contracts the costs of services which . . . are essential to the existence and continuance of the business entity.").

"The Cost Accounting Standards [("CAS")] . . . are designed to achieve 'uniformity and consistency' in allocating costs to government contracts."  *Boeing*, 298 F.3d at 1283 (quoting *Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1565 (Fed. Cir. 1993)).  Tolliver cites to CAS § 9904.406-50 and § 9905.506-60(b) to argue that its attorneys' fees may properly be allocated to the period they benefit—the pre-modification period of performance—instead of the period in which they were incurred—the post-modification period of performance.  Pl.'s Mot. at 6-7.  The government's response is silent on the question of accounting standards.  The court has not identified any accounting principles or standards relevant to Task Order 10 that would prohibit reimbursement of attorneys' fees incurred in the *qui tam* litigation over Tolliver's pre-modification performance.

FAR § 31.205-47 limits the allowability of legal costs.  *See Tolliver Grp.*, 140 Fed. Cl. at 529.  "Costs incurred in connection with any proceeding brought by . . . a third party in the name

of the United States under the False Claims Act" in which the contractor successfully defends itself, FAR § 31.205-47(b), "may be allowable to the extent that" the costs are reasonable, are not otherwise recovered from the government or a third party, are appropriate, and do not exceed 80% of the fees incurred, FAR § 31.205-47(e). As discussed immediately above, Tolliver's fees of $195,889.78 represent 80% of its total litigation costs and were "eminently reasonable." *Tolliver Grp.*, 149 Fed. Cl. at 305. Because Tolliver incurred these fees in a *qui tam* suit that resulted from the government's direction to proceed under Task Order 10 without the requisite technical data package, it is appropriate for the government to reimburse them. Neither party has argued or produced any evidence that Tolliver has recovered these fees from another source. The court therefore concludes that they are consistent with the relevant limitations on allowability in FAR Subpart 31.2.

## CONCLUSION

The court holds that, as a matter of law, Tolliver is entitled to recover 80% of its attorneys' fees incurred in defending itself in the *qui tam* suit under the terms of pre-modification Task Order 10. There is no genuine dispute that Task Order 10 issued as a firm-fixed-price, level-of-effort development contract that, per the FAR, required the government to conduct cost analysis and therefore incorporated the mandatory and deeply ingrained cost principles and procedures in FAR Part 31. Based on these determinations, the court GRANTS Tolliver's motion for summary judgment and DENIES the government's cross-motion for summary judgment. The court awards Tolliver $195,899.78 in attorneys' fees related to the *qui tam* suit.

The clerk is directed to enter judgment in accord with this disposition.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge